[Crim. No. 4268.   First Dist., Div. One.   Dec. 9, 1963.]

THE PEOPLE, Plaintiff and Appellant, v. HAROLD WAYNE GOODSPEED, Defendant and Respondent.

148

Stanley Mosk, Attorney General, Albert W. Harris, Jr., and Barry L. Bunshoft, Deputy Attorneys General, for Plaintiff and Appellant.

Molly H. Minudri, under appointment by the District Court of Appeal, for Defendant and Respondent.

SULLIVAN, J.—This is an appeal by the People from an order granting defendant Harold Wayne Goodspeed a writ of error *coram nobis*.

On November 3, 1961, defendant was charged in an information (case No. 58990) with a violation of section 11500 of the Health and Safety Code on September 21, 1961 (possession of heroin) and in a second count with a violation of section 11530 of said code on the same date (possession of marijuana). On November 3, 1961, defendant and three other persons were charged in a separate information (case No. 59051) with a violation of section 11500 on October 6, 1961 (possession of morphine) and in a second count with a violation of section 11530 (possession of marijuana).[1] After a court trial[2] defendant was convicted on both counts in case No. 58990 and on both counts in case No. 59051 and on April 16, 1962, sentenced in each case on each count to the state prison, the sentences in No. 58990 to run concurrently as to

[1]The charges in No. 59051 against the three other defendants were separately disposed of and do not concern us here.

[2]The defendant waived a jury trial on March 7, 1962, and submitted the matter on the transcript of the preliminary hearing. He was thereupon found guilty on each count of both cases and interposed a motion for probation. The matters were continued to April 16, 1962, at which time probation was denied and sentences imposed.

each count and concurrently as to the sentence on each count in No. 59051 and the sentences in No. 59051 to run concurrently as to each count and concurrently as to the sentence on each count in No. 58990. Defendant took no appeal.

It is not disputed that at the time the foregoing sentences were pronounced, defendant had secreted in his mouth a bindle of heroin. This was discovered while defendant was in the county jail awaiting transfer to the state prison.

On May 8, 1962, defendant was therefore charged in an information (case No. 59986)[3] with a violation of section 4573.6 of the Penal Code occurring on April 17, 1962 (unlawful possession of heroin in a county jail).[4] On May 14, 1962, defendant pleaded guilty to said charge and the court, upon defendant's application, thereupon adjourned the proceedings pursuant to section 6451 of the Penal Code in order to ascertain whether or not defendant was a narcotic addict or by reason of the repeated use of narcotics was in imminent danger of becoming so addicted.[5] Defendant was thereafter examined by two court-appointed psychiatrists. On June 11,

---

[3]On our own motion we have ordered the record on appeal herein augmented to include the county clerk's files in cases Nos. 58990, 59051 and 59986.

[4]Penal Code section 4573.6 provides in relevant part: "Any person having in his possession ... in any county, city and county or city jail ... any narcotics, or drugs in any manner, shape, form, dispenser or container ... without being authorized to so possess the same by the ... rules of the ... jail ... or by the specific authorization of the warden, superintendent, jailer or other person in charge of the ... jail ... is guilty of a felony."

[5]Penal Code section 6451, as then in effect, provided in relevant part: "Upon conviction of a defendant for any crime in any superior court, if the judge ascertains that the defendant is addicted or by reason of repeated use of narcotics is in imminent danger of becoming addicted to narcotics he shall adjourn the proceedings or suspend the imposition of the sentence and direct the sheriff to file a petition to ascertain if such person is addicted to narcotics or in imminent danger thereof unless in the opinion of the judge the defendant's record and probation report indicate such a pattern of criminality that he does not constitute a fit subject for commitment under this section. If a petition is ordered filed, proceedings shall be conducted in substantial compliance with sections 5353, 5053, 5054, and 5055 of the Welfare and Institutions Code.

"If, after a hearing and examination, the judge shall find that the person charged is a narcotic drug addict, or by reason of repeated use of narcotics is in imminent danger of becoming addicted to narcotics, he shall make an order committing such person to the custody of the Director of Corrections for confinement in the facility for a period of 10 years, except as this chapter permits earlier discharge. . . . "

1962, upon the hearing of the matter the court found ''that Defendant is a narcotic drug addict, or in imminent danger of becoming addicted to narcotics and ordered that he be committed to the custody of the Director of Corrections for confinement pursuant to provisions of section 6451 of the Penal Code.'' Defendant was thereupon remanded to the custody of the sheriff to be taken to the Director of Corrections at the California Medical Facility at Vacaville. Such facility refused to admit defendant on the ground that he was ineligible for treatment. We are not clearly advised either by the record or the parties as to the precise basis for this action.[6] However, the determination of such reason is not essential to this appeal. The undisputed fact is that defendant was refused admission and on or about August 7, 1962, returned to the San Francisco County Jail.

On August 27, 1962, defendant filed in case No. 59986 his petition for writ of error *coram nobis*. After stating that on March 7, 1962, defendant was found guilty of possession of narcotics and thereafter sentenced (presumably referring to cases Nos. 58990 and 59051), said petition alleges ''that at the time of sentence petitioner was seriously addicted to the use of narcotics, which fact was unknown to the counsel of petitioner, or to the court; that at the time of sentence petitioner had a bindle of heroin in his mouth, which fact was unknown to the counsel of petitioner, or to the court.'' It is further alleged that upon the subsequent discovery of defendant's possession of the heroin while he was in the county jail ''then and there, and for the first time, counsel for the petitioner, and the court, became aware of petitioner's condition, and the nature and extent of his addiction.'' The petition then recites defendant's plea of guilty to a violation of Penal Code section 6451, his commitment for treatment at

---

[6]The People assert in their brief that the defendant was ineligible under Penal Code section 6452 because he was previously convicted of a violation of section 11500 of the Health and Safety Code. Defendant asserts that it was because he was under a dual conviction, namely a conviction of violation of section 11500 for which he was sentenced to prison and also of a violation of Penal Code section 4573.6 in respect to which sentence had been suspended under Penal Code section 6451. An order of the trial court made August 7, 1962, directing the sheriff to take defendant from the custody of the Director of Corrections and return him to court recites that defendant was ineligible under Penal Code section 6451 because he had been previously convicted of *robbery*. For what it is worth, the Attorney General at oral argument conceded that defendant was rejected because of an ''administrative regulation.''

the California Rehabilitation Center, the refusal of admission and his return to the county jail. It is then alleged "[t]hat due to petitioner's narcotic addiction he was unable to be fully aware of his surroundings, or advise counsel of his condition, and his addiction; that had petitioner's counsel been aware of said condition, a Motion under section 6451 of the Penal Code would have been made in his behalf, prior to his sentence on the violation of 11500 of the Health and Safety Code; that because of this error of fact, said motion was not made, and petitioner finds himself ineligible for treatment for his addiction, due to his dual committment." Defendant prayed for an order "setting aside and vacating the judgment rendered herein on the 7th day of March, 1962, and restoring petitioner to the position in which he stood before this court immediately before the entry of said judgment, thus permitting petitioner to proceed under section 6451 of the Penal Code, and for such other and further relief as to this Court may seem meet and just in the premises.'"[7]

Defendant's above petition came on for hearing on September 7, 1962, at which time the court heard argument. Defendant offered no evidence or affidavits in support of the petition. At the conclusion of the hearing, the court granted the petition, vacated its judgments in cases Nos. 58990 and 59051 and committed defendant to the Director of Corrections to be taken to the California Medical Facility at Vacaville.[8] This appeal followed.

---

[7]The foregoing does not fully or accurately state the record. As we have pointed out, defendant was convicted on two counts (violations of §§ 11500 and 11530) in case No. 58990 and on two counts for violations of the same sections in case No. 59051. Defendant was found guilty on all four counts on March 7, 1962, and sentenced on April 16, 1962.

[8]The following statement dated September 7, 1962, and signed by the trial judge appears in identical language in both case No. 58990 and No. 59051: ''The court granted the petition for Writ of Error Coram Nobis, and the defendant was adjudged to be a Drug Addict within the meaning of section 6451 of the Penal Code. The court ordered its judgment of April 16, 1962, sentencing the defendant to the State Prison set aside and ordered that he be committed to the custody of the Director of Corrections for confinement pursuant to said section 6451 of the Penal Code. Defendant was remanded to custody of the Sheriff, to be taken by him to the Director of Corrections at the California Medical Facility, Vacaville, California.'' The following statement also dated September 7, 1962, was signed and filed in case No. 59986: ''The court granted the petition for Writ of Error Coram Nobis, and the defendant having been heretofore adjudged to be a Drug Addict within the meaning of section 6451 of the Penal Code, the court ordered that he be

■ It is clear that the People may appeal from an order granting a writ of error *coram nobis* as "an order made after judgment, affecting the substantial rights of the people." (Pen. Code, § 1238, subd. 5; *People* v. *Gilbert* (1944) 25 Cal.2d 422, 444-445 [154 P.2d 657]; *People* v. *Lumbley* (1937) 8 Cal.2d 752, 761 [68 P.2d 354].)

■ In discussing the function of a writ of error *coram nobis* the Supreme Court in *People* v. *Tuthill* (1948) 32 Cal. 2d 819, 821 [198 P.2d 505], quoted from *People* v. *Reid* (1924) 195 Cal. 249, 255 [232 P. 457, 36 A.L.R. 1435]: " 'The office of the writ of *coram nobis* is to bring the attention of the court to, and obtain relief from, errors of fact, such as ... *a valid defense existing in the facts of the case, but which, without negligence on the part of the defendant,* was not made, either through duress or fraud or *excusable mistake*; these facts not appearing on the face of the record, and being such as, if known in season, would have prevented the rendition and entry of the judgment questioned.' " (Original italics. In accord: *In re Lindley* (1947) 29 Cal.2d 709, 725 [177 P.2d 918]; *People* v. *Adamson* (1949) 34 Cal. 2d 320, 326-327 [210 P.2d 13]; *People* v. *Martinez* (1948) 88 Cal.App.2d 767, 771 [199 P.2d 375], cert. denied 337 U.S. 909 [69 S.Ct. 1041, 93 L.Ed. 1721]; *People* v. *Hayman* (1956) 145 Cal.App.2d 620, 623 [302 P.2d 810].) ■ "The writ of error *coram nobis* never issues to correct an error of law, nor to redress an irregularity occurring at the trial that could be corrected on motion for new trial or by appeal." (*People* v. *Martinez, supra*; *People* v. *Mooney* (1918) 178 Cal. 525, 529 [174 P. 325]; *People* v. *Burroughs* (1961) 197 Cal.App.2d 229, 234 [17 Cal.Rptr. 323].)

■ In *coram nobis* proceedings there is a strong presumption that the judgment of conviction is valid in all respects. (*People* v. *Shorts* (1948) 32 Cal.2d 502, 508 [197 P.2d 330]; *People* v. *Flores* (1956) 147 Cal.App.2d 243, 246 [305 P.2d 90].) ■ The defendant has the burden of overcoming such presumption and establishing by a preponderance of the evidence "that he was deprived of substantial legal rights by extrinsic causes." (*People* v. *Flores, supra*; *People* v. *Lewis* (1958) 166 Cal.App.2d 602, 605 [333 P.2d 428].)

committed to the custody of the Director of Corrections for confinement pursuant to said section 6451 of the Penal Code. Defendant was remanded to custody of the Sheriff, to be taken by him to the Director of Corrections at the California Medical Facility, Vacaville, California."

█ Thus the applicant for the writ must show (1) the existence of some extrinsic fact at the time of the judgment "which would have prevented its rendition if the trial court had known it and which, through no negligence or fault of the defendant, was not then known to the court" (*People* v. *Adamson, supra,* 34 Cal.2d 320, 326-327) ; and (2) "that the facts upon which he relies were not known to him and could not in the exercise of due diligence have been discovered by him at any time substantially earlier than the time of his motion for the writ; ..." (*People* v. *Shorts, supra,* 32 Cal. 2d 502, 513 ; *People* v. *Adamson, supra.*)

█ In the instant case defendant contends that the extrinsic fact which if known by the trial court would have prevented the rendition of the judgments in the first two cases was his addiction to heroin. His position, with which the People here seemingly take no issue, is that, had this fact been known to the court, "a proper motion under section 6451 of the Penal Code would have been made and granted." Defendant argues that this fact was "unknown at the time judgment was pronounced, to either the Court or to the counsel." But that is not enough. Under the foregoing authorities, the defendant must show that neither the court nor the *defendant himself* knew of such extrinsic fact before judgment. He must show that the court's lack of knowledge is not due to any *negligence or fault on his own part.*

On the record before us it is an ineluctable fact that at the time judgment was pronounced on April 16, 1962, defendant well knew that he was addicted to narcotics. The medical report dated May 31, 1962, of Dr. Cloyce L. Duncan of The Langley Porter Neuropsychiatric Institute, appointed by the court in connection with the proceedings had pursuant to section 6451 of the Penal Code on case No. 59986 (possession of heroin in the county jail), details the medical and psychiatric evaluation given defendant on May 27, 1962. Such report states *inter alia* (under "Pertinent Past History") that defendant, 22 years old at the time of the examination, had started smoking marijuana at age 16; that he began using heroin steadily at about age 19½; that he has been "hooked" for about two and one-half years; and that over said period either consistently or on an experimental basis he had taken heroin, morphine, Dolophine, opium, Percodan, Dilaudid, Pantopon and Methedrine. Among "Physical Findings" is the following: "Inspection and palpation disclosed fibrotic, sclerosed, and pigmented areas along the

main vein tributaries.'' The report describes the withdrawal symptoms of defendant occurring after he was ordered into custody on April 16, 1962, and expresses the opinion that'' ''[t]he defendant's history, plus the pronounced physiologic withdrawal symptoms and the probable toxi-delirium psychotic episode, appear to leave little doubt that the defendant has been addicted to the use of narcotic drugs for the past two and a half years.''

The medical report dated May 22, 1962, of Dr. Jay Dee Wark (also appointed by the court in case No. 59986) giving the results of an examination of defendant on May 22, 1962, is to the same general effect. The report confirms that defendant gave to Dr. Dee Wark substantially the same history which he had given to Dr. Duncan. It similarly concluded that defendant had been heavily addicted.

■ Defendant argues that the fact of drug addiction may be concealed from family, friends and even medical examiners. We question his inclusion of the last named persons. Nevertheless, be that as it may, concealment of the addiction cannot be equated with lack of knowledge of one's own addiction or with excuse for failure to disclose it.

Nor can defendant find support for his position here in his cited cases *Lobaugh* v. *State of Indiana* (1948) 226 Ind. 548 [82 N.E.2d 247] and *Vonderschmidt* v. *State of Indiana* (1948) 226 Ind. 439 [81 N.E.2d 782]. *Lobaugh* held that the state's demurrer to a petition for a writ of error *coram nobis* admitted for the purpose of the demurrer petitioner's allegation to the effect that because of drugs he was not responsible when he pleaded guilty to three separate charges of murder and that the petition thus stated sufficient facts, *if proved*, to establish a denial of due process of law. In *Vonderschmidt* the trial court's order denying a writ of error *coram nobis* where petitioner without counsel pleaded guilty to robbery was reversed because the *undisputed* evidence adduced by both petitioner and the state at the hearing on the petition quite conclusively showed that at the time petitioner pleaded guilty ''he was in a pitiful state both physically and mentally produced by prolonged and continued intoxication.'' (81 N.E.2d at p. 784.) The petitioner introduced evidence, apparently including his own testimony, as to his condition at the crucial time. On the contrary, in the case at bench defendant Goodspeed offered no evidence at all.

■ It is also argued that ''[t]he condition of a man under the influence of narcotics can be likened to that of a

man deprived of his sanity, *unable to be fully aware of his surroundings,* incapable of making a decision in his own behalf, unconscious of the nature and effect of the charges against him; ..." (Italics added.) It is claimed therefore that at the time of the pronouncement of the sentence "defendant, standing by his counsel in Court, was *not a person in the possession of his faculties, ...*" (Italics added.) It is to be noted that the foregoing italicized language does no more than echo the allegations of the petition heretofore set forth. To begin with, as we think the People correctly point out, there is a marked distinction between an extrinsic fact of insanity and an extrinsic fact of addiction. Inherent in the concept of insanity is the possible inability to rationally describe such condition to others, including a person's counsel, thus perhaps excusing both defendant and counsel for failure to take appropriate action in a proceeding. In the case of the addict, on the other hand, increased dependence on narcotics together with any episodes of withdrawal make him painfully aware of the fact of his addiction.

However, the record before us furnishes a telling and irrefutable answer to defendant's argument: There is absolutely no evidence that defendant was under the influence of drugs to the extent claimed by him either at the time of trial on March 7, 1962 (see footnote 2, *ante*) or at the time of sentence on April 16, 1962. Aside from the apparently undisputed fact that he had secreted a bindle of heroin in his mouth on the latter occasion, defendant offered no evidence at all of his condition on either of said occasions. It is significant that we find no affidavit or testimony of any kind from defendant's counsel supporting the claim that defendant was not in the possession of his faculties when he appeared at trial and for judgment. It is also significant that the trial judge on the hearing of the application for the writ expressed no views that defendant, on the occasions above alluded to, was not "aware of his surroundings" or "in the possession of his faculties" but on the contrary expressed the belief that defendant didn't understand the law.[9]

We perceive behind the facade of these proceedings

---

[9]The court stated: "I feel that the man is only 21, and I feel that if I had known that he was an addict, that I would have granted the request that he be sent there, and I would have done that. And the mere fact that he didn't bring it to my attention—I don't think he understood the law that there was a difference between going one place or the other...."

the solicitude of the trial court in its attempt to make the rehabilitative treatment of the state available to an addict. However laudable the objective, it cannot be attained in the instant case by the unjustified use of legal process whose scope is extremely narrow (*People* v. *Darcy* (1947) 79 Cal. App.2d 683, 693 [180 P.2d 752]; *People* v. *Hayman, supra,* 145 Cal.App.2d 620, 623) under circumstances where the essential requisites for the issuance of the writ have not been shown to exist. (See *People* v. *Shorts, supra,* 32 Cal.2d 502, 513; *People* v. *Tuthill, supra,* 32 Cal.2d 819, 821; *People* v. *Adamson, supra,* 34 Cal.2d 320, 327.) Moreover, the state does not make such treatment available to all defendants. (See Pen. Code, § 6452.)

It is well settled, of course, that in a proceeding like that before us, the granting of relief is a matter largely within the discretion of the trial court whose ruling will not be upset on appeal except for an abuse of that discretion. (*People* v. *Bible* (1955) 135 Cal.App.2d 65, 68 [286 P.2d 524]; *People* v. *Lewis, supra,* 166 Cal.App.2d 602, 605; *People* v. *Burroughs, supra,* 197 Cal.App.2d 229, 234.) This means a discretion exercisable according to the rules of law. We quote the time-honored statement from *Bailey* v. *Taaffe* (1866) 29 Cal. 422, 424: "The discretion intended, however, is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles. It is not a mental discretion, to be exercised *ex gratia,* but a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. In a plain case this discretion has no office to perform, and its exercise is limited to doubtful cases, where an impartial mind hesitates. ..." (For a more recent statement see *People* v. *Surplice* (1962) 203 Cal.App.2d 784, 791 [21 Cal.Rptr. 826].)

The order made by the court in the case at bench does not comport with the pertinent legal principles. There was no showing that the fact on which defendant relies was not known to him at the time of trial and of judgment. There was no showing that the court's lack of knowledge thereof at such points in the proceeding was not due to negligence or fault of defendant. There was no attempt of any kind made by defendant to sustain his burden of overcoming the validity of the judgments in the first two cases. On the record before us, we must conclude that the issuance of the writ was a clear abuse of discretion.

Although defendant filed only one petition for a writ of error *coram nobis* praying therein that the court vacate and set aside the *judgment* (i.e., singular) rendered on March 7, 1962, it is clear from the instant record as augmented that there were *two judgments* rendered on said date, one in case No. 58890 and the other in case No. 59051. It is also clear that in granting defendant's petition, the court considered its action as effective in each case and, as already pointed out, made a separate order in each case vacating the respective judgment therein. While this procedure is anomalous and we express no approval of it, the record is susceptible of the interpretation that a separate writ was in fact issued in each case.

The order granting a writ of error *coram nobis* in case No. 58890 and the order granting a writ of error *coram nobis* in case No. 59051 are, and each of them is reversed, and the cause remanded with directions to the trial court to reinstate and reenter its judgment and sentence rendered on April 16, 1962, in each of said cases.

Bray, P. J., and Molinari, J., concurred.