[Crim. No. 1914.   First Appellate District, Division One.—December 28, 1936.]

THE PEOPLE, Respondent, v. JAMES COX et al., Appellants.

F. W. Creely for Appellants.

U. S. Webb, Attorney-General, and Seibert L. Sefton, Deputy Attorney-General, for Respondent.

THE COURT.—This is an appeal by James Cox, R. K. Weatherill and J. E. Soderholm from an order of the superior court denying their application for a writ of error *coram nobis,* after indictment, trial and conviction in said court on five counts of grand theft and five counts of violation of the Corporate Securities Act. Indicted jointly with appellants on the five counts charging violation of the Corporate Securities Act was one W. H. Gregory, and he too was found guilty on those counts. Gregory alone appealed, and on February 19, 1936, the judgment of conviction as to him was affirmed. (*People* v. *Gregory,* 12 Cal. App. (2d) 7 [54 Pac. (2d) 770].) Subsequently and on May 8, 1936, the appellants herein filed and later presented their petition for a writ of error *coram nobis,* alleging facts upon which they based the contention that the judgments of conviction against them were founded on a mistake of fact; and after a hearing before the same judge who had presided at the trial of the action, the petition was denied.

The record on appeal herein does not contain a transcript of any of the evidence taken or proceedings had at the trial of the action on the merits; but the essential facts upon which the defendants were found guilty appear in the opinion affirming the judgment in the Gregory case, and they are as follows: In 1929 the appellant Cox, claiming to have developed a new secret process for dehydrating and decarbonizing crude oil, entered into a contract with the appellant Weatherill to finance the building of a plant to carry on the oil processing operations in accordance with the Cox formula. Under the terms of said contract Weatherill was given the right to purchase the formula and an oil lease owned by Cox, in consideration of which Weatherill agreed, among other things, to erect the plant and organize a corporation to take over the operation of the enterprise, one-fourth of the capital stock in which corporation was to be issued to Cox and his wife. Thereupon and before such a corporation was organized the appellants and others associated with them, without having first applied for or ob-

tained from the state corporation commissioner a permit authorizing them so to do, proceeded to sell to the public certain unit certificates of interest and participation in said contract, and the sale of these units continued up to 1933, when a corporation was organized under the laws of Nevada. The unit certificate holders were then induced to exchange their certificates for the capital stock of said corporation, and besides an extensive stock sales campaign was conducted which continued up to September, 1934. All of these transactions, including the stock sales, were carried on without any authority therefor from the corporation commissioner; and between 1929 and 1934 the receipts from sales of unit certificates and capital stock exceeded $700,000. The grand theft counts were based on charges of having obtained money under false pretenses during the sales campaign. The prosecution contended at the trial of the action and on the Gregory appeal that the evidence proved that the entire enterprise was a fraud; and in sustaining such contention the court in its opinion in the Gregory case said: "For the purposes of this discussion, it is sufficient to state that the evidence conclusively shows that all of the defendants other than defendant Gregory were actively engaged in the sales campaign which involved a gigantic scheme to cheat and defraud the public through the sale, by false representations, of securities representing interests in a wholly worthless process." It appears, however, that on March 3, 1936, which was about two weeks subsequent to the rendition of that decision, the United States patent office issued letters patent to Cox, assignor by mesne assignment to D. M. Dorman, for a compound for treating petroleum; and appellants alleged in their petition for the writ herein that said patent, a copy of which is set out in the petition, covered the Cox formula out of which the entire criminal prosecution arose. They contended, therefore, in furtherance of the petition, that the granting of the patent was proof in itself that the judgments of conviction were based on a mistaken fact; and that since the patent was not issued until after the convictions became final, they were entitled to the writ to annul the judgments.

In denying the petition the court stated that the issuance of the patent did not have the effect, as appellants contended, of proving that the convictions were based on mistaken fact;

that during the trial before the jury appellants were permitted to demonstrate what they claimed the process would accomplish, and admittedly the demonstration was a failure; that the evidence adduced by the prosecution showed that the process had no merit whatever, except possibly as a process for the dehydrating of oil, in which there was nothing novel; and that the mere fact of the issuance of the patent did not in itself establish the truth of the representations appellants had made in behalf of the process, nor prove that the convictions were based on a mistake of fact.

It is apparent that in the absence of any transcript of the evidence taken at the trial of the action, the question of the soundness of the trial court's conclusion as to the effect of issuance of the letters patent cannot be inquired into on this appeal; and much less, in that state of the record, would there be any legal ground upon which it could be held as a matter of law that its conclusion is unsupported. Under well-settled rules the presumption is the other. way.

But, irrespective of the question of the effect of the issuance of the letters patent, the fact that the patent was granted and the purport thereof at most constituted newly discovered evidence, and the law of California is well settled that because of the existence in this state of the remedies of right of appeal and motion for new trial, newly discovered evidence cannot be made to serve as the basis for the granting of a writ of error *coram nobis*. (*People* v. *Reid,* 195 Cal. 249 [232 Pac. 457, 36 A. L. R. 1435]; *People* v. *Mooney,* 178 Cal. 525 [174 Pac. 325]; *People* v. *Cabrera,* 7 Cal. (2d) 11 [59 Pac. (2d) 804]; *People* v. *Paysen,* 123 Cal. App. 396 [11 Pac. (2d) 431], and cases therein cited.) Those cases furthermore expressly declare that such is the rule even though the facts upon which the application for the writ ic based were not discovered until too late to present them upon a motion for new trial. As said in *People* v. *Reid, supra,* and reaffirmed in the later cases: "Where the legislature has provided a statutory remedy which supplants in whole or in part a corresponding common-law remedy and has appended thereto a statute of limitations different from that which governs the common-law remedy, there is presented the situation of a conflict between the common law and the statute, in which case the latter must prevail. To hold in such case that after expiration of the statutory limit

the common-law remedy could still be availed of would be to hold in effect that in case of conflict between the two the common law prevails over the statute. This question also is settled in this state by *People* v. *Mooney, supra."*

We find nothing in the contentions made by appellants which differentiates the present case from those above cited, nor which would tend to take it out of the operation of the doctrine established thereby. The order denying the petition for the writ is therefore affirmed.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 25, 1937.